IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE PHILIPS, | ) | CASE NO. 1:10-CV-2563 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION & ORDER** |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 12). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Christine Philips's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court VACATES the Commissioner's decision and REMANDS the case back to the Social Security Administration.

I. INTRODUCTION & PROCEDURAL HISTORY

On December 13, 2007, Christine Philips ("Plaintiff" or "Philips") protectively filed an application for a Period of Disability and Disability Insurance benefits. (Tr. 35, 37, 54-61). Plaintiff's insured status for Disability Insurance benefits terminated on December 31, 2007. (Tr. 35). On December 18, 2007, she also applied for Supplemental Security Income benefits. (Tr. 36). Philips alleged that she became disabled on September 7, 2006, due to suffering from

tremors and mental problems. (Tr. 54, 91). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 35-43). Thereafter, Philips requested a hearing before an administrative law judge to contest the Commissioner's denial of her applications. (Tr. 45-46).

On October 5, 2009, Administrative Law Judge Irving Pianin (the "ALJ" or "ALJ Pianin") conducted a hearing via video to consider Plaintiff's requests for benefits. (Tr. 475-501). ALJ Pianin presided over the hearing from Norfolk, Virginia, and Plaintiff appeared in Erie, Pennsylvania. (Tr. 16, 475). Philips was represented by counsel during the hearing and testified in response to questioning by the ALJ and her counsel. (Tr. 475-501). Vocational expert, Paula Day, also appeared and testified at the proceeding. (Tr. 497-500).

On October 14, 2009, ALJ Pianin issued a written decision denying Plaintiff's applications for benefits. (Tr. 16-25). In his decision, the ALJ applied the five-step sequential analysis,[1] and determined that Philips was not disabled under the Social Security regulations.

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her

(*Id*.)  Subsequently, Plaintiff requested review of ALJ Pianin's decision from the Social Security Appeals Council on the same date ALJ Pianin issued his ruling.  (Tr. 12).  But, on December 16, 2009, the Appeals Council denied Plaintiff's request, thereby making ALJ Pianin's decision the final decision of the Commissioner.  (Tr. 9-11).  Philips now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Plaintiff, born on January 14, 1972, was thirty-four years old on her alleged onset date. (Tr. 35, 23).  Under the Social Security regulations, she is considered to be a "younger person". *See* 20 C.F.R. §§ 416.963(c); 404.1563(c).  Philips completed high school and has past experience working in the fast food industry and as a wax pattern coater and nurse assistant.  (Tr. 482, 496-97).

## II.  MEDICAL EVIDENCE[2]

Philips began mental health treatment at The North Coast Center in September 2006.  (Tr. 408-10).  At the center, Plaintiff met with various counselors, therapists and psychiatrists, including Dr. Khoa Tran.  (Tr. 308-410).  She complained of feeling worried about her husband, tearfulness, difficulty sleeping and eating, and problems with anxiety.  (Tr. 409, 384).  Dr. Tran diagnosed Plaintiff with post traumatic stress disorder and major depressive disorder.  (Tr. 366). Philips continued to receive treatment at The North Coast Center through February 2009.  (Tr. 308).

---

> residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

[2] The Court's discussion of Plaintiff's medical record is limited to the evidence regarding Plaintiff's mental health as this evidence formed the basis of Plaintiff's primary reason for appeal.  This recitation of the evidence is not intended to reflect a complete picture of Plaintiff's medical file, but rather only those records which the Court deemed relevant to its decision.

On May 2, 2008, Philips presented to Dr. Richard Halas, a clinical psychologist, for a consultative evaluation. (Tr. 151-56). Plaintiff was referred to Dr. Halas for evaluation by the Bureau of Disability Determination. *See* (Tr. 151). Dr. Halas observed Philips to have an extremely high level of anxiety and to be "somewhat anxious and apprehensive". (Tr. 152). However, he noted that her overall mental presentation was within normal limits. (*Id.*) Dr. Halas also administered intellectual testing – the Wechsler Adult Intelligence Test III—to Philips. (Tr. 154). Her full scale score was 73, placing her approximately in the fourth percentile of the general population. (*Id.*) Upon reviewing the results, Dr. Halas remarked that Philips was "significantly below average" in her perception of pertinent missing details, conceptualization of abstract forms, social understanding and social awareness, and in vocabulary, verbal abstractions and comprehension. (*Id.*) Plaintiff's performance was average in the areas of matrix reasoning and mathematical skills. (*Id.*)

Dr. Halas diagnosed Philips with generalized anxiety disorder with occasional panic attacks and phobic features, major depression recurrent type and borderline intellectual functioning. (Tr. 155). He also rated her global assessment of functioning ("GAF") score at 45, reflecting serious symptoms. (*Id.*) With regard to her mental ability to perform work related tasks, Dr. Halas found that Plaintiff was markedly impaired in the abilities to "relate to others, including peers, supervisors, and the general public" and to "withstand the stresses and pressures associated with most day-to-day work settings". (Tr. 155-56). On the other hand, he noted that she only suffered from a moderate impairment in her abilities to "follow through with simple one and two step instructions or directions" and to "maintain attention to do simple repetitive tasks". (*Id.*)

State agency physician, Cindy Matyi, conducted a review of Plaintiff's file on June 5, 2008. In her assessment, Dr. Matyi opined that Philips was moderately limited in the following areas: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. (Tr. 175-76). But, Dr. Matyi found that Philips was not significantly limited in the remaining eleven areas of mental functioning.[3] (*Id.*)

Dr. Matyi's assessment also included a brief report of Plaintiff's daily activities, medical history and Dr. Halas's findings. In summarizing her opinions, Dr. Matyi remarked that Plaintiff's work should not involve: 1) more than occasional contact with the public and coworkers; 2) influencing others or resolving conflict; or 3) "more than daily planning or extended periods of attention and concentration." (Tr. 177). In her summary, Dr. Matyi commented that she disagreed with Dr. Halas's finding of marked limitations, contending that this degree of limitation was inconsistent with Plaintiff's reported daily activities and with the

---

[3] These areas of functioning included: remembering locations and work-like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; making simple work-related decisions; asking simple questions or requesting assistance; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. (Tr. 175-76).

treating source's medical evidence of record.[4] (*Id*.) On September 5, 2008, state agency physician, Frank Orosz, completed a review of Plaintiff's file and affirmed Dr. Matyi's opinion as written. (Tr. 261).

In 2009, Dr. Tran of The North Coast Center completed an assessment evaluating Plaintiff's mental capacity for work.[5] (Tr. 465). He diagnosed Philips with major depressive disorder and panic disorder.[6] (*Id*.) In rating Plaintiff's mental abilities, Dr. Tran opined that Philips had a marked ability to "[e]ngage in normal daily activities such as bathing, eating, [and] dressing" and to "[c]oncentrate to complete tasks in a timely manner." (*Id*.) Moreover, he opined that Plaintiff's ability to cooperate and engage socially with others was extremely limited. (*Id*.) Additionally, he noted that stress would deteriorate Plaintiff's condition, and that Philips's impairment would cause her to withdraw from work related activities "many times". (*Id*.) Dr. Tran also assigned Plaintiff a GAF score of 48. (*Id*.)

## III. ALJ's RULING

After completing a review of the record, ALJ Pianin determined that Philips was not disabled under the Social Security regulations. (Tr. 16-25). At step one of the sequential evaluation analysis, the ALJ found that Philips had not engaged in substantial gainful activity since September 7, 2006, her alleged onset date. (Tr. 18). Next, at step two, ALJ Pianin held that Philips suffered from the following severe impairments: status post ankle injury, asthma, back disorder, mood disorder, borderline intellectual functioning and anxiety disorder. (Tr. 18-

---

[4] It is not clear as to which of Plaintiff's treating physicians Dr. Matyi was referring because she did not state any physician's name or reference any particular record.

[5] Dr. Tran's evaluation is not dated, but both parties acknowledge that it was drafted sometime in 2009.

[6] It appears that Dr. Tran rated Plaintiff's major depressive disorder as moderate. (Tr. 465).

6

19). Yet, at step three, the ALJ ruled that none of these impairments, individually or in combination, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-21). Before moving to the next step, ALJ Pianin assessed Plaintiff's residual functional capacity ("RFC"). The ALJ determined that Philips retained the RFC to perform a limited range of light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b). (Tr. 21-23). Because Plaintiff's RFC precluded her from performing work which required more than light exertional effort, at step four, ALJ Pianin concluded that Philips could not return to any of her past relevant work. (Tr. 23). However, at step five, he held that there were jobs existing in the national economy which Plaintiff could perform. (Tr. 24-25).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a

7

preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Philips challenges ALJ Pianin's decision on two grounds. First, Philips contends that the ALJ failed to adhere to the requirements of the treating source rule in his evaluation of the opinions offered by Plaintiff's treating psychiatrist, Dr. Khoa Tran.[7] Second, Plaintiff maintains that ALJ Pianin improperly weighed her credibility.

### A. ALJ's Evaluation of the Medical Opinion Evidence

When assessing the medical evidence contained within a claimant's file, it is well-established that the ALJ must give special attention to the findings of the claimant's treating sources. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, referred to as the "treating source rule" recognizes that physicians who have a long-standing

---

[7] Defendant did not challenge Dr. Tran's status as a treating source.

treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id*.; 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

Even when a treating physician's opinion is not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Id*. These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which the claimant is receiving treatment, and any other factors that may support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6); 416.927(d)(2)-(6). The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. *Id*.

The Sixth Circuit announced that the good reasons requirement serves a two-fold purpose. First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that h[er] physician has deemed h[er] disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 242 (6th Cir. 2007) (*quoting Wilson, 378 F.3d at 544*) (internal quotations omitted). Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* at 243. Remand is appropriate when an ALJ fails to provide adequate reasons explaining the weight assigned to a treating source's

9

opinions, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 543-46).

In addition to considering opinions from treating sources, the regulations also require ALJs to consider opinions from state agency physicians.  20 C.F.R. §§ 404.1527(f)(2)(i)-(iii); 416.927(f)(2)(i)-(iii).  The regulations tout that these sources are "highly qualified physicians" and "experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(f)(2)(i); 416.927(f)(2)(i).  Therefore, when a claimant's treating source is not given controlling weight, the ALJ's written decision must explain the weight attributed to the opinions of the state agency physicians.  20 C.F.R. §§ 404.1527(f)(2)(ii); 416.927(f)(2)(ii).  Yet, "the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician."  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (*citing Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).

ALJ Pianin assigned little weight to Dr. Tran's findings ruling that they were not supported by Plaintiff's level of daily activity or by Dr. Tran's treatment notes.  ALJ Pianin also discounted the opinions presented by Dr. Halas because the ALJ found that they were "based on one visit and there [wa]s no longitudinal history to support his findings."  (Tr. 23).  After reviewing the record, the undersigned finds that the ALJ's stated reasons for rejecting Dr. Tran's opinions did not amount to "good reasons" in satisfaction of the treating source rule.

This case presents the rare occasion when an ALJ chooses to reject the consistent opinions of both the claimant's treating source and a state agency consulting physician, indicating that the claimant's impairments are disabling, and instead rule that the claimant is capable of working.  Here, Dr. Tran remarked that Plaintiff's ability to concentrate and perform

in a timely manner was markedly restricted; similarly, Dr. Halas noted that Plaintiff's ability to maintain attention was moderately impaired. (Tr. 465, 156). Likewise, both doctors opined that Philips had at least marked limitations in interacting with others and significant problems in withstanding the stresses and pressures of day to day work. (Tr. 155, 465). Despite these findings, ALJ Pianin concluded that Plaintiff only suffered from moderate limitations in the areas of social functioning and concentration, persistence and pace. (Tr. 21).

The ALJ provided several reasons for discrediting Dr. Tran's opinions. To begin, ALJ Pianin noted that Plaintiff's lack of hospitalizations or emergency room visits and conservative treatment undermined Dr. Tran's conclusions. Additionally, the ALJ stated that Dr. Tran's treatment notes documented Plaintiff's behavior as alert and cooperative, and her thought processes as logical, linear and coherent. ALJ Pianin highlighted that Philips had no complaints of delusions, paranoia or psychosis. Lastly, the ALJ explained that Plaintiff's ability to perform a number of daily activities, including cooking, cleaning, shopping and driving, did not coincide with Dr. Tran's findings.

While it was proper for the ALJ to evaluate Dr. Tran's findings in comparison with Plaintiff's lack of hospitalizations and conservative treatment, not all of the ALJ's stated reasons were appropriate. It is well-established that ALJs may not make medical judgments. *See Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). This Court has also recognized that "[d]epression, anxiety and other mental health disorders require specialized training to evaluate and diagnose." *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823 (N.D.Ohio 2009) (O'Malley, J.) (*citing Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995)).

Accordingly, ALJs must not substitute their lay opinion for that of mental health experts. *See id. at 824*.

In the case *sub judice*, a number of ALJ Pianin's stated reasons for rejecting Dr. Tran's opinions were improper because they were based upon the ALJ's substitution of his lay opinion in lieu of Dr. Tran's opinions. In *Brewer v. Astrue*, No. 1:10-cv-1224, 2011 WL 2461341, at *6-8 (N.D.Ohio June 17, 2011) (White, J.), this Court vacated the Commissioner's denial of benefits after finding that the ALJ had erroneously substituted his opinion for that of the claimant's treating physician. The facts in *Brewer* are substantially similar to the facts of the instant case. For example, Brewer's treating physician opined that she had poor to no ability to maintain attention, work with the public or coworkers, deal with work stress, or to behave in an emotionally stable manner. *Id*. at *5. However, her doctor's notes also showed that Brewer's energy levels were "fairly good", that she was "alert, oriented, and cooperative during appointments; and, [that] she had linear, coherent and logical thought processes." *Id*. at *6. The doctor's treatment notes also depicted periods when Brewer's symptoms improved with treatment. *Id*. In light these treatment notes, the ALJ in *Brewer* assigned "little weight" to the treating physician's opinions concerning Brewer's abilities to work because the ALJ concluded that the doctor's opinions were not supported by his own treatment notes.

This Court vacated the ALJ's ruling, explaining:

> [t]he ALJ's reasoning appears to be based on the assumption that a person with the severe limitations that Dr. Ajit assessed could not be alert, oriented, cooperative during appointments, be more active, have fairly good energy levels, or exhibit linear, coherent and logical thought processes. Although the ALJ's assumption appears reasonable to a lay person and might ultimately be correct, he has no special expertise to make such an assumption. The ALJ's finding that Dr. Ajit's opinion is inconsistent with his own treatment notes essentially constitutes the ALJ's interpretation of the medical data of record. ALJ's are not trained medical experts and it is well-established that they may not substitute their own opinion for that of a medical professional.

*Id.* (*citing Meece*, 192 F. App'x at 465). The Court also held that Brewer's noted improvement did not automatically undercut her physician's findings, and that it was improper for the ALJ to render an opinion of Plaintiff's abilities based upon his own review of the physician's notes. *Id*.

The ruling in *Brewer* is persuasive because ALJ Pianin committed the same error made by the ALJ in *Brewer*. Notably, ALJ Pianin discounted Dr. Tran's findings by highlighting that Philips was alert and cooperative, and that her thought processes were logical, linear and coherent. Yet, as stated in *Brewer*, the ability to exhibit these qualities does not negate the possibility that a person possessing such abilities could still be inhibited from performing various work tasks. Such a determination can only be properly addressed by a medical professional. *See Winning*, 661 F. Supp. 2d at 823. Thus, it was not appropriate for ALJ Pianin to discredit Dr. Tran's opinions based upon his own comparison of whether the observations noted in Dr. Tran's treatment records were consistent with the findings Dr. Tran reached in his ultimate evaluation of Philips's abilities.

The ALJ's error here was particularly problematic because after the ALJ discounted Dr. Tran's opinions, he also discredited the findings of Dr. Halas, the state agency consultative examiner, who provided opinions consistent with Dr. Tran. For instance, despite acknowledging Plaintiff's ability to raise her daughter, cook and clean, Dr. Halas opined that Philips suffered from a marked impairment in relating to others and withstanding the stresses and pressures of day to day work. (Tr. 151-56). Because Dr. Tran and Dr. Halas were the only two doctors who physically examined Philips and subsequently provided written evaluations of her conditions, the consistency between their opinions was specially relevant in this case and should have alerted the ALJ to carefully weigh their opinions, and ensure that his reasons for rejecting them were valid. While an ALJ is not required to give any special amount of deference to the opinions of a

physician who has only examined the claimant one time, *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994), Dr. Halas's opinions are significant in this case because they largely corroborate Dr. Tran's opinions. Thus, in this case, it was critical for ALJ Pianin to provide adequate and legitimate reasons for the weight he assigned to Dr. Tran's opinions. Instead, the reasons provided by the ALJ fell short of satisfying the "good reasons" requirement because ALJ Pianin went beyond his role of merely evaluating the medical evidence, and improperly assumed the role of a medical professional. Though the ALJ stated that the "record as a whole d[id] not support a finding of marked limitations in any mental functioning area", (Tr. 23), it is now questionable whether the ALJ's basis for this statement was rooted upon his own view of the capabilities a person with the restrictions announced by Dr. Tran and Dr. Halas should possess. While there is no bright line delineating what issues are out of the purview of an ALJ, it is apparent that an ALJ is not equipped with sufficient knowledge or training to critique the symptoms and resulting effects of mental disorders as ALJ Pianin did here. *See Winning*, 661 F. Supp. 2d at 823. On remand, it may be beneficial for the ALJ to seek the testimony of a medical expert to testify to such matters.

Additionally, the undersigned also notes that ALJ Pianin failed to explicitly indicate what medical authority he relied upon in ruling that Philips suffered from only moderate limitations in social functioning and concentration, persistence and pace. It would appear that the ALJ was either relying upon his own review of the medical evidence or upon the opinions of the state agency reviewing physicians who opined that Plaintiff suffered from moderate limitations at most. As addressed above, the former is erroneous because it amounts to the ALJ rendering an impermissible medical judgment. The latter is also improper.

To the extent that ALJ Pianin relied upon Dr. Matyi's opinion in discrediting Dr. Tran's findings, that decision was in error. Neither Dr. Matyi, nor Dr. Orosz physically examined Plaintiff to evaluate her mental impairments. Both doctors' opinions were solely limited to their review of the medical evidence appearing in Plaintiff's file. In *Shelman*, the Sixth Circuit announced that opinions from these non-examining consultants are entitled to little weight when contrary to the opinions of the claimant's treating physicians. *Shelman*, 821 F.2d at 321. Thus, here it would have been improper for ALJ Pianin to use Dr. Matyi's findings to reject Dr. Tran's opinions. Further even assuming that ALJ Pianin relied upon the state agency physicians' opinions, the ALJ also erred by failing to explain why he attributed greater weight to the opinions of these non-examining reviewers than to the opinions of the doctors who physically examined and treated Philips.[8]

### B. Plaintiff's Credibility

The Social Security regulations set forth the criteria an ALJ should evaluate when assessing the credibility of a claimant's allegations regarding her symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii); 404.1529(c)(3)(i)-(vii). An ALJ's credibility findings are entitled to great deference "since [the] ALJ is charged with the duty of observing a witness's demeanor". *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). But, an ALJ must state his reasons for finding a claimant's testimony incredible. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

---

[8]Although the ALJ did not cite to Dr. Matyi's evaluation in his discussion of Dr. Tran's opinion, the undersigned notes that the reasons put forth by the ALJ for discounting Dr. Tran's opinions seemingly mirror Dr. Matyi's reasons for discrediting Dr. Halas's findings, signifying that the ALJ may have been relying upon Dr. Matyi's opinion at least to some degree.

ALJ Pianin ruled that Plaintiff's statements regarding her symptoms were not credible. (Tr. 22). Philips asserts two main objections to ALJ Pianin's unfavorable credibility determination. The undersigned reads Plaintiff's first argument to purport that the ALJ somehow evaluated her credibility out of sequence. Plaintiff's argument is based upon the sentence in the ALJ's written opinion stating, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id*.) Plaintiff reads this statement as implicating that the ALJ determined her RFC first and then evaluated how her credibility compared to the ALJ's predetermined RFC. Philips submits that the ALJ should have evaluated her credibility prior to making a determination of her RFC.

The undersigned finds that this assignment of error has no merit. Although ALJ Pianin's phrasing may be somewhat ambiguous, Plaintiff has not come forward with any evidence showing that the ALJ actually determined her RFC before considering the credibility of her statements. The ALJ's phrasing is commonly used by numerous ALJs in articulating their assessment of a claimant's credibility, and the undersigned is not convinced that this phrasing in any way reflected faulty logic on behalf of the ALJ.

Philips also argues that ALJ Pianin's credibility finding was not supported by the evidence. Plaintiff maintains that the ALJ overstated her abilities to perform certain daily activities and disregarded evidence illustrating Plaintiff's ankle and back pain. Particularly, Philips submits that although the ALJ relied upon treatment records from Dr. Catherine Ferguson to find that Plaintiff did not have any limitation with her right ankle, treatment notes from Dr. Emad Mikhail reveal that Plaintiff continued to suffer from ankle pain. Likewise, Plaintiff submits that there is evidence in the record supporting her complaints of back pain, which the

ALJ dismissed as not disabling.  Because the Court finds that remand is warranted on other grounds, it is not necessary to evaluate the merits of these challenges to the ALJ's credibility finding.  It is likely that the ALJ's second review of the medical opinion evidence will also have some effect on the ALJ's consideration of the veracity Plaintiff's claims.  On remand, the ALJ should also consider the additional evidence Plaintiff points to regarding her back and ankle pain and clearly express his reasons for discrediting any portion of Plaintiff's testimony.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>Kenneth S. McHargh<br>United States Magistrate Judge

Date:  January 5, 2012.